UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TREVA KIRKBRIDE, <br> as Trustee of the R and K Trust, <br> on behalf of herself and a class of <br> similarly situated persons, <br> <br> PLAINTIFF, <br> <br> vs. <br> <br> ANTERO RESOURCES CORPORATION, <br> a Delaware corporation <br> <br> DEFENDANT. | Case No. |

## CLASS ACTION COMPLAINT

Plaintiff Treva Kirkbride, as Trustee of the R and K Trust ("Kirkbride" or "the Trust"), on behalf of herself and the defined Subclasses described below, for her Class Action Complaint against Antero Resources Corporation ("Antero"), alleges:

### PARTIES

1. Kirkbride is the sole trustee of the R and K Trust, and is a resident and citizen of Ohio. Antero has paid the R and K Trust royalties under a 2011 Lease Agreement, as amended in 2014, and a 1988 Lease Agreement, as amended in 2014.

2. Antero is a Delaware corporation, with its principal place of business located at 1615 Wynkoop St., Denver, Colorado 80202.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the dollar amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and because this is a class action in which one or more members of the proposed

Subclasses is a citizen of states other than Colorado and Delaware — the two states of citizenship of Antero.

4. This Court has personal jurisdiction over Antero because Antero has conducted substantial business activities in the State of Ohio, and because the acts and conduct of Antero giving rise to the claims asserted in this Class Action Complaint occurred in the State of Ohio.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged in this Class Action Complaint occurred in this judicial district.

## FACTUAL ALLEGATIONS RELATED TO KIRKBRIDE

6. On August 2, 2011, Myron Roe, as Lessor, entered into an oil and gas lease with Eclipse Resources I, LP, as Lessee, pertaining to leased premises located in Noble County, Ohio ("2011 Lease Agreement"). Prior to May 1, 2018, Antero acquired the lessee's interest in the 2011 Lease Agreement, and Antero has held the lessee's interest in the 2011 Lease Agreement from the time Antero first acquired that interest to the present.

7. On August 8, 2014, the 2011 Lease Agreement was amended by an "Amendment to and Ratification of Oil and Gas Lease" ("2014 Lease Amendment"), under which Myron Roe, Kirkbride, and Darin Kirkbride are identified as Lessors, and Antero (through an entity formerly known as Antero Resources Appalachian Corporation) is the Lessee. The 2014 Lease Amendment amended and supplanted the royalty provisions in the 2011 Lease. The applicable natural gas royalty provision in the 2014 Lease Amendment states as follows:

> B) <u>Gas</u>. Lessee shall pay Lessor Twenty Percent (20%) of the gross proceeds received by Lessee for all gas and other hydrocarbons and by-products produced from or on the Leasehold Estate and sold by Lessee in an arms length transaction of or through an Affiliated Entity on the sale or re-sales of such gas, the value thereof shall be the higher of (a) the sales price received by Lessee, or (b) the sale price received on all of the Affiliated Entity's sales of the aggregated production volumes, where such aggregated production

volumes include production from the Leasehold Estate during applicable months of sales less the same proportionate share of all production, petroleum excise, and severance taxes.

C) <u>Market Enhancement Clause</u>.  It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all royalties for oil, gas or other production (including but not limited to natural gas liquids and/or condensate, such as ethane, propane and butane) accruing to the Lessor under this Lease shall be paid without deduction, directly or indirectly, for the costs or expenses of Lessee (or an Affiliate of Lessee) relating to producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder; *provided, however*, Lessee may deduct from Lessor's royalties accruing under the Lease, Lessor's proportionate share of any cost or expense actually incurred and charged to Lessee by a third party that is not owned or controlled by Lessee and relating thereto on the express condition such costs or expenses are necessarily incurred to enhance the value of the oil, gas or other products, including transforming product into a marketable form, and in any such case, the computation of the Lessor's royalty shall include the additional consideration, if any, paid to Lessee as a result of the enhancement of the market value of such products. (emphasis in original).

8. Kirkbride acquired Myron Roe's lessor's interests in the 2011 Lease Agreement upon his death. In December 2015, Kirkbride and Darin Kirkbride transferred their interests in the 2011 Lease Agreement into the R and K Trust, with Kirkbride as the sole Trustee of that Trust.

9. The applicable royalty provisions in the 2014 Lease Amendment are substantively identical to the applicable royalty provisions in numerous other lease agreements between Antero and other lessors pertaining to lands located in the State of Ohio (hereinafter referred to as "Form 2013 Leases"). The "Form 2013 Lease" term is utilized because at least as early as the year 2013, Antero adopted and utilized a lease form with royalty provisions that are substantively identical to the 2014 Lease Amendment.

10. On October 4, 1988, E. Myron Roe and Loretta W. Roe, husband and wife, as Lessors, entered into an oil and gas lease with the Oxford Oil Company, as Lessee, pertaining to leased premises located in Noble County, Ohio ("1988 Lease"). Prior to May 1, 2018, Antero acquired the Lessee's interest under the 1988 Lease and Antero has held such interest since acquiring it.

3

11. On August 11, 2014, the 1988 Lease was amended by an "Amendment to Oil and Gas Lease" ("2014 Cost Free Lease Amendment"), under which E. Myron Roe, Darin Lewis Kirkbride, and Kirkbride are identified as Lessors and Eclipse Resources-Ohio, LLC is the Lessee. The 2014 Cost Free Lease Amendment amended and supplanted the original royalty provision in the 1988 Lease with a new royalty provision, which became the controlling royalty provision for all oil and gas production thereunder. Prior to May 1, 2018, Antero acquired the Lessee's interest under the 2014 Cost Free Lease Amendment and Antero has held such interest since acquiring it. The royalty provision in the 2014 Cost Free Lease Amendment states:

> Royalty. In consideration of the premises, the said parties covenant and agree as follows: Lessee shall deliver to the credit of Lessor, in tanks or pipelines, free of all costs and expenses except taxes applicable thereto, a royalty of fifteen percent (15%) of the oil produced. Lessor shall receive on a monthly basis, as a royalty, fifteen percent (15%) of the proceeds realized at the well from the sale of all gas marketed from the premises. Lessee shall have the option to make such payments on a quarterly basis if such monthly net royalty proceeds are less than $100.
>
> Cost Free Royalty: It is agreed between the Lessor and the Lessee that, notwithstanding any language herein to the contrary, all royalties for oil, gas, or other production accruing to the Lessor under this Lease shall be paid without deduction, directly or indirectly, for the costs or expenses of Lessee relating to producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder.

12. Kirkbride acquired Myron Roe's interests in the 2014 Cost Free Lease Amendment upon his death. In December 2015, Kirkbride and Darin Kirkbride transferred their interests in the Lease into the R and K Trust, with Kirkbride as the sole Trustee.

## **CLASS DEFINITIONS**

13. Kirkbride brings this action individually and on behalf of two subclasses of similarly situated persons, defined as:

## SUBCLASS I

All persons to whom Antero has paid royalties at any time since May 23, 2018, under oil and gas lease agreements or overriding royalty agreements (collectively, "leases") covering lands located in the State of Ohio, under which Antero owns, or has owned, the lessee's interest, and which lease generally requires royalties to be paid based upon [a specified percentage] of the gross proceeds received by Lessee for all gas and other hydrocarbons and byproducts produced from or on the Leasehold Estate and sold by Lessee in an arms length transaction of or through an Affiliated Entity on the sales or re-sales of such gas, the value thereof shall be the higher of (a) the sales price received by Lessee, or (b) the sale price received on all of the Affiliated Entity's sales of the aggregated production volumes, where such aggregated production volumes include production from the Leasehold Estate during applicable months of sales (less any proportionate share of taxes), and which generally includes a market enhancement clause, as follows (hereinafter "Subclass I Leases"):

> …all royalties for oil, gas or other production (including but not limited to natural gas liquids and/or condensate, such as ethane, propane and butane) accruing to the Lessor under this Lease shall be paid without deduction, directly or indirectly, for the costs or expenses of Lessee (or an Affiliate of Lessee) relating to producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder; *provided*, *however*, Lessee may deduct from Lessor's royalties accruing under the Lease, Lessor's proportionate share of any cost or expense actually incurred and charged to Lessee by a third party that is not owned or controlled by Lessee and relating thereto on the express condition such costs or expenses are necessarily incurred to enhance the value of the oil, gas or other products, including transforming product into a marketable form, and in any such case, the computation of the Lessor's royalty shall include the additional consideration, if any, paid to Lessee as a result of the enhancement of the market value of such products.

Excluded from Subclass I are: (1) agencies of the United States of America; and (2) Antero, its current officers and employees.

## SUBCLASS II

All persons to whom Antero paid royalties at any time since May 23, 2018, under oil and gas lease agreements or overriding royalty agreements (collectively, "leases") covering lands located in the State of Ohio, under which Antero owns, or has owned, the lessee's interest, and is therefore legally responsible for the payment of royalties under the leases generally requiring the Lessee to pay as royalty [a specified percentage] of the proceeds realized at the well from the sale of all gas marketed from the premises, and which leases contain what is titled a "Cost Free Royalty" clause, which generally requires:

> …all royalties for oil, gas, or other production accruing to the Lessor under this Lease shall be paid without deduction, directly or indirectly, for the costs or

5

>expenses of Lessee relating to producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas, and other products produced hereunder. (hereinafter "Subclass II Leases").

Excluded from Subclass II are: (1) agencies of the United States of America; and (2) Antero, its current officers and employees.

## SUBCLASS I FACTUAL ALLEGATIONS

14. The members of Subclass I are parties to Subclass I Leases, under which Antero has paid royalties to them since May 23, 2018 on natural gas produced and sold by Antero from wells in Ohio which are subject to Subclass I Leases.

15. Antero is a lessee or overriding royalty payor, whether by succession or as the original party, under Subclass I Leases, and has produced and sold natural gas from wells subject to Subclass I Leases, and paid royalties to Kirkbride and the other members of Subclass I.

16. Kirkbride and the other members of Subclass I are lessors under a Subclass I Lease under which Antero acquired the lessee's interest, and Antero has paid royalties to Kirkbride and other members of Subclass I at certain times after May 23, 2018.

17. In its calculation of royalties paid to Kirkbride and the other members of Subclass I, Antero has consistently underpaid the royalties owed to Kirkbride and other Subclass I members, by improperly deducting from the sales price received on the sale of natural gas liquids various post-production costs and expenses charged by entities owned or controlled by Antero, including, without limitation, expenses for separating, fractionating, treating, processing, and marketing the natural gas liquid products produced and sold.

18. Antero has also underpaid the royalties owed to Kirkbride and other Subclass I members by using a payment methodology commonly referred to as the "shrink value method." Under this method, Antero calculates the volume of natural gas used to produce natural gas liquids, calculated on a per MMBtu basis, which is then multiplied by a weighted average sales price for Antero's

sales of residue gas. In making this "shrink value" calculation, Antero does not take into account the proceeds which Antero receives on its sale of natural gas liquid products to third party purchasers when Antero calculates the royalties paid to Kirkbride and other members of Subclass I. Under this method, Antero pays royalties to the Subclass I members on amounts that are substantially less than the prices received on Antero's sale of natural gas liquid products to third party purchasers.

19. Under the 2014 Lease Amendment and Subclass I Leases, Antero, as Lessee, is expressly prohibited from deducting any costs or expenses relating to separating, treating, dehydrating, compressing, processing, transporting, and marketing the natural gas liquid products from the royalty paid to Kirkbride and members of Subclass I unless: (1) the cost or expense is incurred and charged to enhance the value of natural gas liquid products; and (2) the costs or expenses are charged to Antero by a third party "that is not owned or controlled by Lessee."

20. By underpaying the royalties owed to Kirkbride and other Subclass I members in the manner described above, Antero has breached its contractual obligations to Kirkbride and the other Subclass I members under their Subclass I Leases.

21. As a result of Antero's breaches of its royalty payment obligations under the Subclass I Leases, Kirkbride and the other Subclass I members have sustained substantial damages.

**SUBCLASS I CLASS ALLEGATIONS**

22. Each of the requirements for certification of a Fed. R. Civ. P. 23(b)(3) Class is satisfied in this case.

23. On information and belief, there are more than one thousand members of Subclass I who reside in numerous states throughout the United States.

24. The members of Subclass I are so numerous that separate joinder of all Subclass I members is impracticable.

25. There are questions of law or fact common to Subclass I, including:

   A. Whether Antero has breached its obligations under Subclass I Leases by deducting various post-production costs from the sales price of natural gas liquid products in its calculation and payment of royalties to Kirkbride and other Subclass I members, including deductions based on expenses or charges imposed by entities owned by Antero.

   B. Whether Kirkbride and other Subclass I members are entitled to recover prejudgment interest on the amounts of Antero's royalty underpayments from the date of each such underpayment, and the applicable rate (or rates) of prejudgment interest to be used in determining the amounts of prejudgment interest owed to Kirkbride and other Subclass I members.

26. Kirkbride's claims against Antero are typical of the claims of the other members of Subclass I against Antero because each Subclass I member's claims against Antero are identical.

27. Kirkbride will fairly and adequately protect the interests of Subclass I. Kirkbride is represented by counsel who are skilled and experienced in royalty underpayment class action litigation, and Kirkbride's interests do not conflict with the interests of any of the other members of Subclass I.

28. The questions of law and fact common to Subclass I predominate over any individual questions affecting only individual members of Subclass I.

29. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**SUBCLASS II FACTUAL ALLEGATIONS**

30. Kirkbride and the other members of Subclass II are parties to Subclass II Leases under which Antero has paid royalties to them on gas produced by Antero from wells in Ohio subject to a Subclass II Lease.

31. Antero is a lessee or overriding royalty payor, whether by succession or as the original party, under the Subclass II Leases and has produced natural gas and natural gas liquid products from wells subject to the Subclass II Leases, and paid royalties to Kirkbride and the other members of Subclass II on such production.

32. Under the Subclass II Leases, Antero, as the Lessee, is required to pay as royalty to Kirkbride and the other members of Subclass II, a specified percentage of the proceeds realized at the well from the sale of all gas, including natural gas liquid products, marketed from premises covered by a Subclass II Lease.

33. Under the Subclass II Leases, Antero, as the Lessee, is expressly prohibited from deducting, directly or indirectly, costs or expenses relating to producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced from wells drilled subject to a Subclass II Lease.

34. Pursuant to the natural gas royalty provisions contained in the Subclass II Leases, Antero, as the Lessee, is obligated to pay Kirkbride and the other Subclass II members royalties based on prices received by Antero on its sale of residue gas and natural gas liquid products at the point of sale.

35. Upon information and belief, all gas produced by Antero from wells drilled subject to the Subclass II Leases is gathered, compressed, and transported to a processing plant, where the gas is processed and treated, and the natural gas liquid products are separated from the natural gas and fractionated into individual natural gas liquid products, then both the residue gas and natural gas liquid products are sold downstream from the processing plant.

36. Upon information and belief, Antero, in its calculation and payment of royalties to Kirkbride and the other members of Subclass II, has consistently utilized a royalty accounting

methodology wherein Antero deducts costs that are specifically prohibited under the Subclass II Leases including gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the gas and other products produced thereunder without reporting such deductions on the Subclass II members' royalty statements.

37. In the alternative, upon information and belief, when Antero reports no values for natural gas liquid products on the Subclass II members' royalty statements, Antero is improperly using what is commonly referred to as the "shrink value method." Under this method, Antero calculates the volume of natural gas used to produce natural gas liquids, calculated on a per MMBtu basis, which is then multiplied by a weighted average sales price for Antero's sales of residue gas. In making this "shrink value" calculation, when Antero calculates the royalties paid to Kirkbride and other members of Subclass II, Antero does not take into account the proceeds which it receives on its sale of natural gas liquid products to third party purchasers, including by deducting from the selling price of the gas to third party purchasers processing costs and other costs which are specifically prohibited under the Cost Free Royalty provision of the Subclass II Leases. As a result, Antero pays royalties to the Subclass II members on amounts which are substantially less than the prices received on Antero's sale of natural gas liquid products to third party purchasers.

38. Thus, upon information and belief, Antero, in its calculation and payment of royalties to Kirkbride and the other members of Subclass II, has consistently and systematically underpaid the royalties owed to Kirkbride and the other Subclass II members by failing to pay royalties on prices received for the sale of both residue gas and natural gas liquid products produced from wells subject to Subclass II Leases.

39. By underpaying the royalties owed to Kirkbride and the other Subclass II members in the manner described above, Antero has breached its contractual obligations to Kirkbride and the other Subclass II members under the Subclass II Leases.

40. As a result of Antero's breaches of its royalty payment obligations under the Subclass II Leases, Kirkbride and the other Subclass II members have sustained substantial damages.

## SUBCLASS II CLASS ALLEGATIONS

41. Each of the requirements for certification of a Fed. R. Civ. P. 23(b)(3) Class is satisfied in this case.

42. On information and belief, are more than one thousand members of Subclass II who reside in numerous states throughout the United States.

43. The members of Subclass II are so numerous that separate joinder of all Subclass II members is impracticable.

44. There are questions of law or fact common to Subclass II, including:

   a. Whether Antero has breached its obligations under Subclass II Leases by deducting various post-production costs from the sales price of natural gas liquid products, or by failing to pay royalties on prices received for natural gas liquids, in its calculation and payment of royalties to Kirkbride and other Subclass II members.

   b. Whether Kirkbride and other Subclass II members are entitled to recover prejudgment interest on the amounts of Antero's royalty underpayments from the date of each such underpayment, and the applicable rate (or rates) of prejudgment interest to be used in determining the amounts of prejudgment interest owed to Kirkbride and other Subclass II members.

45. Kirkbride's claims against Antero are typical of the claims of the other members of Subclass II against Antero. Because each Subclass II member's claims against Antero are identical.

46. Kirkbride will fairly and adequately protect the interests of Subclass II. Kirkbride is represented by counsel who are skilled and experienced in royalty underpayment class action

litigation, and Kirkbride's interests do not conflict with the interests of any of the other Subclass II members.

47. The questions of law and fact common to Subclass II predominate over any individual questions affecting only individual members of Subclass II.

48. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**COUNT I – BREACH OF CONTRACT - SUBCLASS I**

49. The allegations in Paragraphs 1 through 48, inclusive, are restated and incorporated by reference herein.

50. At all times relevant hereto, Kirkbride and the other members of Subclass I were royalty payees under valid and enforceable Subclass I Leases under which Antero has been obligated to pay royalties, and has paid royalties, at various times since May 24, 2018.

51. Antero has breached its contractual obligations to Kirkbride and the other members of Subclass I under Subclass I Leases in the manner described above.

52. Kirkbride and the other members of Subclass I have sustained substantial damages as a direct result of Antero's breaches of its contractual obligations to Kirkbride and the other members of Subclass I under Subclass I Leases. Kirkbride and the other members of Subclass I are entitled to recover the total amount of royalty underpayments made by Antero since May 24, 2018, inclusive of applicable prejudgment interest.

53. None of the Subclass I members or Kirkbride has materially breached an obligation, if any, which such person may have to Antero under a Subclass I Lease.

**COUNT II- BREACH OF CONTRACT – SUBCLASS II**

54. The allegations in Paragraphs 1 through 53, inclusive, are restated and incorporated by reference.

55. At all times relevant hereto, Kirkbride and the other members of Subclass II were royalty payees under valid and enforceable Subclass II Leases under which Antero has been obligated to pay royalties, and has paid royalties, at various times since May 24, 2018.

56. Antero has breached its contractual obligations to Kirkbride and the other members of Subclass II under Subclass II Leases in the manner described above.

57. Kirkbride and the other members of Subclass II have sustained substantial damages as a direct result of Antero's breaches of its contractual obligations to Kirkbride and the other members of Subclass II under Subclass II Leases. Kirkbride and the other members of Subclass II are entitled to recover the total amount of royalty underpayments made by Antero since May 24, 2018, inclusive of applicable prejudgment interest.

58. None of the Subclass II members or Kirkbride has materially breached an obligation, if any, which such person may have to Antero under a Subclass II Lease.

## **PRAYER FOR RELIEF**

WHEREFORE, Kirkbride prays for the following relief:

A. An Order certifying two Fed. R. Civ. P. 23(b)(3) subclasses, appointing Kirkbride as the Class Representative of Subclass I and Subclass II, and appointing Kirkbride's attorneys as Class Counsel for Subclass I and Subclass II.

B. A judgment in favor of Kirkbride and the other Subclass I and Subclass II members on their claims for Antero's breach of the Subclass I Leases and Subclass II Leases at issue, in the full amount of Antero's royalty underpayments through the date of final judgment, plus applicable prejudgment and post-judgment interest;

C. An award of court costs; and

D. Such further relief as the Court deems just.

## **JURY DEMAND**

Kirkbride and the other members of Subclasses I and II demand a jury trial on all issues so triable.

DATED:  May 24, 2022

        George A. Barton, Mo. Bar No. 26249 (*pro hac vice forthcoming*)
        Stacy A. Burrows, CO. Bar No. 49199 (*pro hac vice forthcoming*)
        Barton and Burrows, LLC
        5201 Johnson Drive, Suite 110
        Mission, KS 66205
        (913) 563-6250
        Fax: (913) 563-6259
        stacy@bartonburrows.com
        george@bartonburrows.com

        and

        */s/ Clifford N. Sickler*
        Clifford N. Sickler, 18853
        Sickler Law Office, LLC
        508 North Street
        Caldwell, OH 3724
        740-732-1495
        cliff@sicklerlawoffice.com

        ***ATTORNEYS FOR TREVA KIRKBRIDE, AS TRUSTEE OF THE R AND K TRUST, AND THE PROPOSED SUBCLASSES***